UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

---

JIMMY GORE,

    Plaintiff,

v.

BRIDGES UROLOGY, LLP,

    Defendant.

---

CASE NO. 19-cv-_____

JUDGE _____

MAGISTRATE JUDGE _____

**JURY TRIAL DEMANDED ON SPECIFIC ISSUES**

## COMPLAINT

**BIZER & DEREUS**
Attorneys for Plaintiff
Andrew D. Bizer (LA # 30396)
andrew@bizerlaw.com
Garret S. DeReus (LA # 35105)
gdereus@bizerlaw.com
Emily A. Westermeier (LA # 36294)
ewest@bizerlaw.com
3319 St. Claude Ave.
New Orleans, LA 70117
T: 504-619-9999; F: 504-948-9996

## **PRELIMINARY STATEMENT**

1. Jimmy Gore is a Deaf individual who communicates in American Sign Language ("ASL"), which is his primary language. In January 2019, Mr. Gore called Defendant to make an appointment for urology services.

2. This action concerns the Defendant's refusal to provide medical care to Mr. Gore because he is Deaf and requested an interpreter at his appointment.

3. As a Deaf individual who communicates primarily in ASL, it is vital that Mr. Gore have access to a qualified in-person interpreter or another auxiliary aid at his medical appointments in order to fully communicate with the physician and their staff.

4. Lip-reading, the ability to understand the speech of another by watching the speaker's lips, is an extremely speculative means of communication and is no substitute for direct doctor-patient communication through a qualified sign language interpreter. Only a small amount of the spoken sounds of aural language are visible, and many of those appear identical on the lips.

5. Moreover, ASL (Mr. Gore's primary language) and English are two completely distinct languages that are mutually unintelligible. They are as different from one another as English is from Russian, for example. Thus, expecting a Deaf individual like Mr. Gore to lip-read English speakers is also not an appropriate alternative to a qualified in-person interpreter.

6. Nor is it appropriate to refuse an interpreter or other auxiliary aid and rely on passing written notes instead. While a hearing person could easily ask an employee or staff member to explain an unknown medical word or phrase, a Deaf person is unable to ask for assistance in understanding unknown English words without the aid of a sign language interpreter or other auxiliary aid.

7. Video Remote Interpreting (VRI) is a videotelecommunication service that uses devices such as web cameras or videophones to provide sign language or spoken language interpreting services through a remote or offsite interpreter.

8. Mr. Gore brings this lawsuit seeking injunctive and declaratory relief and attorneys' fees and costs to redress the Defendant's unlawful discrimination and retaliation on the basis of disability in violation of Title III of the Americans With Disability Act, 42 U.S.C. § 12181 ("ADA"); Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 794; and Section 1557 of the Patient Protection and Affordable Care Act ("Section 1557"), 42 U.S.C. § 18116. Mr. Gore also seeks compensatory and nominal damages pursuant to the Rehabilitation Act and Section 1557.[1]

9. With regards to Mr. Gore's request for nominal damages, it is Mr. Gore's position that an award of nominal damages would confer significant civil rights to the public, as a judgment in his favor against the Defendant, regardless of the amount, would deter the Defendant from discriminating against Deaf individuals in the future.

## THE PARTIES

10. Plaintiff Jimmy Gore (hereinafter "Mr. Gore") brings this action and is an individual residing in Baton Rouge, Louisiana. Mr. Gore communicates primarily in American Sign Language and is substantially limited in the major life activities of hearing and speaking and is a qualified person with a disability within the meaning of the ADA, RA, and Section 1557.

11. Defendant BRIDGES UROLOGY, LLP is a limited liability partnership organized in Louisiana with the domicile of 7777 Hennessy Blvd Ste. 608, Baton Rouge, LA 70808. The Defendant owns, leases, and/or operates Bridges Urology, which is located at the

---

[1] Mr. Gore recognizes that money-damages are not available under Title III of the ADA.

same address. The Defendant is operating a place of public accommodation under federal antidiscrimination laws and is a recipient of federal financial assistance, including Medicare and/or Medicaid reimbursements, thus making the Defendant subject to the requirements of the ADA, Section 1557 and the RA.

## JURISDICTION & VENUE

12. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343 for Mr. Gore's claims arising under federal law.

13. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because the Defendant committed discriminatory acts within the jurisdiction of this District and a substantial part of the events that give rise to the claims occurred in this District.

## STATEMENT OF FACTS

14. Mr. Gore is a profoundly Deaf individual who communicates primarily through ASL.

15. Mr. Gore requires auxiliary aids and services, like an in-person sign language interpreter, to communicate in an equivalent manner to non-disabled, hearing persons, in a medical setting. Mr. Gore also requires a sign language interpreter in order to understand his doctors and nurses and to assist him with asking questions in ASL about the meaning of complex documents that are written in English and documents that use advanced terminology.

16. Mr. Gore is a leader within his local Deaf community, serving as a State Representative for the Deaf Grassroots Movement of Louisiana and a Commissioner of the Louisiana Commission for the Deaf. He has dedicated many years to advocating for himself and other Deaf individuals on their right to ASL interpreters.

17. In or around early 2019, Mr. Gore reviewed the 2019 provider directory issued by his medical insurance provider to locate and identify urologists in his area that were in his network. Mr. Gore selected Dr. Bridges of Bridges Urology because the office was close to his home and was accepting new patients.

18. On or around January 22, 2019, Mr. Gore called Bridges Urology through a video relay service. During this call, the employee of Bridges Urology indicated that Dr. Bridges was taking new patients and scheduled Mr. Gore for an appointment on February 12, 2019. Mr. Gore requested that an ASL interpreter be present at the appointment he had just scheduled.

19. On or around January 23, 2019, the office manager for Bridges Urology contacted Mr. Gore and told him that Dr. Bridges would not be providing a sign language interpreter for his appointment. The office manager presented Mr. Gore with two options: 1) bring his own personal interpreter or 2) agree to write back and forth with Dr. Bridges. Mr. Gore informed the office manager that Defendant was required to provide him with an interpreter during his appointment, but the office manager insisted that Mr. Gore either choose one of the options offered or his appointment would be cancelled. Mr. Gore again insisted that Defendant was required to provide him with an interpreter for his appointment, so the office manager cancelled Mr. Gore's February 12th appointment.

20. On January 24, 2019, attorney Andrew D. Bizer sent a fax on attorney letterhead to Dr. Bridges.

21. In his letter, Mr. Bizer stated as follows:

> I write regarding my client, Jimmy Gore. As you are well aware, Mr. Gore is profoundly Deaf and requires a qualified American Sign Language interpreter to communicate. When Mr. Gore called your office via videophone on January 23, 2019 to make an appointment, he requested a qualified American Sign Language interpreter for his visit. You refused to provide him with an interpreter, and said that you would not accept him as a patient, despite the fact that Mr. Gore

>   found your office on a list of in-network providers who were accepting new patients.
>
>   As you may know, under the Americans with Disabilities Act and the Rehabilitation Act, Deaf individuals like Mr. Gore are entitled to reasonable communication accommodations during their interaction with their health care providers. The health care provider is to provide the accommodation – and not the Deaf individual.
>
>   Let me be perfectly clear: You are to provide Mr. Gore with a qualified ASL interpreter for all of his appointments with you and your staff. Please call him on his videophone at 225-XXX-XXXX to schedule an appointment where a qualified ASL interpreter will be provided. I hope this letter ends my involvement in this matter.

22. After the letter was faxed to Dr. Bridges, Mr. Gore called Defendant's office through a video relay service to confirm that the letter was received and that he could reschedule his appointment wherein an interpreter would be provided. The employee who answered the phone told Mr. Gore that because Dr. Bridges had been contacted by Mr. Gore's attorney, he would not be accepting Mr. Gore as a patient. Mr. Gore explained that the letter from Mr. Bizer was to educate Defendant of its obligations under the ADA and that he still wanted to have an appointment with Dr. Bridges. At that point, Defendant's employee told Mr. Gore that Dr. Bridges was now not accepting new patients, despite the fact that Mr. Gore had been told that Dr. Bridges was accepting new patients when he first scheduled his appointment.

23. To date, Defendant has not taken any steps to rectify its discrimination against Mr. Gore or schedule him for an appointment.

24. The Defendant's denial of medical care with any auxiliary aids to Mr. Gore constituted discrimination on the basis of his disability. The Defendant's threats to Mr. Gore in response to his assertions of his civil rights as an individual with a disability constituted further discrimination and retaliation. This discrimination caused Mr. Gore to experience fear, anxiety,

frustration, indignity, emotional distress, mental anguish, embarrassment, and humiliation, as well as a violation of his civil rights.

25. The Defendant, through its staff, employees, nurses, and/or doctors, knew or should have known of its obligations under the ADA and Section 504 of the Rehabilitation Act to provide accommodations to individuals with disabilities, including individuals who are Deaf, and to develop policies to promote compliance with these statutes.

26. The Defendant, through its staff, employees, nurses, and/or doctors, knew or should have known that the actions and/or inactions of its staff created an unreasonable risk of causing Mr. Gore greater levels of fear, anxiety, frustration, indignity, emotional distress, mental anguish, embarrassment, and/or humiliation than a hearing person would be expected to experience.

27. The harm sustained by Mr. Gore herein is the expected and foreseeable consequence of the Defendant's failure to comply with the requirements and mandates of federal civil rights law. The statute and accompanying regulations exist to ensure that individuals with disabilities who have communication limitations will have full use of places of public accommodations. When the Defendant failed to adhere to its obligations under these regulations, it was imminently foreseeable that those with disabilities would sustain the exact harms alleged by Mr. Gore in this lawsuit.

28. The Defendant, through its staff, employees, nurses, and/or doctors, refused to make and/or reschedule an appointment for Mr. Gore on account of his disability.

29. The Defendant, through its staff, employees, nurses, and/or doctors, excluded Mr. Gore from the medical services offered to the general public on account of his disability.

30. The Defendant, through its staff, employees, nurses, and/or doctors, refused to provide any accommodations for Mr. Gore's disability.

31. The Defendant, through its staff, employees, nurses, and/or doctors, threatened Mr. Gore and retaliated against him, solely on the basis of his efforts to assert his civil rights.

32. Despite the Defendant's knowledge of its obligation to accommodate persons with disabilities—including individuals that are Deaf—Defendant did not take adequate steps to ensure that it communicated with Mr. Gore in a manner equivalent to hearing persons.

33. As a result of the Defendant's refusal to provide accommodations to Mr. Gore, he was denied access to medical services on the basis of disability.

34. The Defendant discriminated against Mr. Gore with deliberate indifference to his disability and related communication needs.

35. Based on the facts alleged above, the Defendant intentionally discriminated against Mr. Gore.

36. Further, the Defendant was purposeful in its choices, which is sufficient to constitute intentional discrimination under the RA and ACA.

37. The harm sustained by Mr. Gore herein is the expected and foreseeable consequence of the Defendant's failure to comply with the requirements and mandates of the RA and ACA. These statutes and accompanying regulations exist to ensure that those with communication limitations will have equal access to places of public accommodations. When the Defendant failed to adhere to its obligations under these regulations, it was imminently foreseeable that those with disabilities would sustain the exact harms alleged by Mr. Gore in this lawsuit.

38. By and through the Defendant's failure to make its healthcare services

meaningfully accessible to individuals who are Deaf, the Defendant has committed disparate impact discrimination sufficient to state a claim for damages under the RA and ACA.

39. Mr. Gore is presently deterred from receiving the Defendant's healthcare services due to their refusal to accommodate his disability and their outright hostility towards his assertion of his rights. The Defendant's discrimination is likely to continue absent a court order. He desires to utilize the Defendant's services in the near future, due to his need for urological medical services that are within his insurance network, the proximity of the facility to his home, and his ongoing need for the specific medical care provided by the Defendant. Mr. Gore's medical problems persist and he would like to receive medical care from Dr. Bridges as soon as possible. Thus, Mr. Gore clearly evidences an intent to return to the Defendant for ongoing medical care, but needs the Defendant to provide the necessary accommodations for his disabilities along with the provision of medical care.

40. Due to the ongoing discrimination he has encountered, Mr. Gore reasonably anticipates that he will encounter discrimination again in the near future when he next returns to Defendant's facility for medical care, without taking legal action to protect his rights.

## CLAIM I: VIOLATIONS OF TITLE III OF THE AMERICANS WITH DISABILITIES ACT

41. Mr. Gore repeats and realleges paragraphs 1-40 in support of this claim.

42. At all times relevant to this action, Title III of the ADA, 42 U.S.C. § 12181, et seq. has been in full force and effect and has applied to the Defendant's conduct.

43. At all times relevant to this action, the United States Department of Justice regulations implementing Title III of the ADA, 28 C.F.R. Part 36, have been in full force and effect and have applied to the Defendant's conduct.

44. At all times relevant to this action, Mr. Gore has been substantially limited in the

major life activities of hearing and communicating, and is an individual with a disability within the meaning of the ADA, 42 U.S.C. § 12102(2).

45. The Defendant owns and operates a place of public accommodation within the meaning of 42 U.S.C. § 12181(7)(F).

46. Title III of the ADA provides that "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

47. Title III of the ADA further provides that "[i]t shall be discriminatory to subject an individual … on the basis of disability … to a denial of the opportunity of the individual … to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity." 42 U.S.C. § 12182(b)(1)(A)(i). Moreover, Title III of the ADA similarly provides that "[i]t shall be discriminatory to afford an individual … on the basis of a disability … with the opportunity to participate in or benefit from a good, service, privilege, advantage, or accommodation that is not equal to that afforded to other individuals." *Id.* at § 12182(b)(1)(A)(ii).

48. Federal regulations implementing Title III of the ADA provide that a public entity "shall furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities." 28 C.F.R. § 36.303(c).

49. Federal regulations implementing Title III of the ADA further provide that a public entity "shall take those steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other

individuals because of the absence of auxiliary aids and services." 28 C.F.R. § 36.303(a).

50. Similarly, these federal regulations state that a public entity "shall make reasonable modifications in policies, practices, or procedures, when the modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities…" 28 C.F.R. § 36.302.

51. Additionally, the ADA prohibits retaliation against "any individual because such individual has opposed any act or practice made unlawful [under the statute]." 42 U.S.C. § 12203(a). Similarly, the ADA states that "[i]t shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of … any right granted or protected by this [statute]." *Id.* at § 12203(b).

52. Based on the above allegations, the Defendant discriminated against Mr. Gore on the basis of disability, in violation of Title III of the ADA and its implementing regulations.

53. The Defendant further retaliated against, intimidated, and threatened Mr. Gore because he exercised his rights under the ADA.

54. As set forth above, absent injunctive relief there is a clear risk that the Defendant's actions will recur and cause Mr. Gore additional injury.

55. Mr. Gore is therefore entitled to injunctive relief, as well as an award of attorneys' fees, costs, and disbursements pursuant to the ADA, 42 U.S.C. § 12188(a)(1).

**CLAIM II: VIOLATIONS OF SECTION 504 OF THE REHABILITATION ACT**

56. Mr. Gore repeats and realleges paragraphs 1-55 in support of this claim.

57. At all times relevant to this action, Section 504 of the Rehabilitation, 29 U.S.C. § 794, has been in full force and effect and has applied to the Defendant's conduct.

58. At all times relevant to this action, the United States Department of Health and Human Services ("HHS") regulations implementing Section 504 of the Rehabilitation Act, 45

C.F.R. Part 84, have been in full force and effect and have applied to the Defendant's conduct.

59. At all times relevant to this action, Mr. Gore had substantial limitations to the major life activities of hearing and speaking, and was an individual with a disability within the meaning of the Rehabilitation Act, 29 U.S.C. § 705(9).

60. At all times relevant to this action, the Defendant offered a program or activity receiving federal financial assistance pursuant to 29 U.S.C. § 794(b).

61. Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794.

62. The Defendant discriminated against Mr. Gore, solely on the basis of disability, by denying him equal access to the services, programs, and benefits the Defendant offers to other individuals, and by refusing to provide auxiliary aids and services necessary to ensure communication equivalent to that provided to hearing persons, in violation of 29 U.S.C. § 794.

63. The Defendant also discriminated against Mr. Gore, solely on the basis of disability, by denying him reasonable accommodation requests, in violation of 29 U.S.C. § 794.

64. Mr. Gore is therefore entitled to seek and recover compensatory and nominal damages for the injuries and loss he sustained as a result of the Defendant's discriminatory conduct and deliberate indifference alleged herein, pursuant to 29 U.S.C. § 794(a).

65. Mr. Gore is further entitled to an award of attorneys' fees, costs, and disbursements pursuant to the Rehabilitation Act, 29 U.S.C. § 794(a).

### CLAIM III: VIOLATIONS OF SECTION 1557 OF THE PATIENT PROTECTION AND AFFORDABLE CARE ACT

66. Mr. Gore repeats and reiterates every allegation set forth in the foregoing

paragraphs of this Complaint with the same force and effect as if more fully set forth at length herein.

67. At all times relevant to this action, Section 1557 of the Patient Protection and Affordable Care Act ("Section 1557"), 42 USC § 18116 was in full force and effect, and applied to Defendant's conduct.

68. At all times relevant to this action, Section 1557, 42 USC § 18116, incorporated the definition of disability in the Rehabilitation Act, 29 U.S.C. § 705(9).

69. At all times relevant to this action, Mr. Gore had substantial limitations to the major life activities of hearing and speaking, and was an individual with a disability within the meaning of the Rehabilitation Act, 29 U.S.C. § 705(9) and of Section 1557, 42 USC § 18116.

70. At all times relevant to this action, Mr. Gore's primary language for communication was American Sign Language, and not English.

71. At all times relevant to this action, the Defendant received federal financial assistance, including Medicaid reimbursements, and was principally engaged in the business of providing health care. Therefore, the Defendant is operating health programs or activities receiving federal financial assistance pursuant to 42 U.S.C. § 18116(a).

72. Pursuant to Section 1557, "an individual shall not, on the ground prohibited under . . . section 504 of the Rehabilitation Act of 1973 (29 U.S.C. 794), be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance . . ." 42 USC § 18116.

73. The Defendant discriminated against Mr. Gore solely on the basis of disability, by excluding him from the services, programs, and benefits that the Defendant offered to other

individuals in violation of Section 1157, 42 U.S.C. § 18116.

74. The Defendant discriminated against Mr. Gore solely on the basis of disability, by denying him equal access to the services, programs, and benefits that the Defendant offered to other individuals and by refusing to provide auxiliary aids and services necessary to ensure access to its services in violation of Section 1157, 42 U.S.C. § 18116.

75. The Defendant discriminated against Mr. Gore by failing to ensure equivalent communication to that provided hearing persons, through its refusal to provide qualified sign language interpreters on-site and/or through VRI machines.

76. The Defendant discriminated against Mr. Gore by denying his requests for reasonable accommodations.

77. Mr. Gore is therefore entitled to seek and recover compensatory and nominal damages for the injuries and loss he sustained as a result of the Defendant's discriminatory conduct as hereinbefore alleged, pursuant to 42 U.S.C. § 18116(a).

78. Mr. Gore is further entitled to an award of attorney's fees, costs, and disbursements pursuant to 42 U.S.C. § 18116(a), the Rehabilitation Act, 29 U.S.C. § 794(a).

## **PRAYER FOR RELIEF**

**WHEREFORE,** Mr. Gore respectfully prays that this Court grant the following relief against the Defendant:

A. Enter a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that the Defendant's policies, procedures, and practices subjected Mr. Gore to unlawful discrimination in violation of the RA and Section 1557;

B. Issue an injunction ordering the Defendant:

    i.     to develop, implement, promulgate, and comply with a policy prohibiting future discrimination against Mr. Gore or other Deaf individuals by failing to provide accommodations in the form of a sign language interpreter and other appropriate auxiliary aids and services;

    ii.     to develop, implement, promulgate, and comply with a policy requiring that when a Deaf individual requests an in-person interpreter for effective communication, one will be provided as soon as practicable in all services offered by the Defendant;

    iii.     to develop, implement, promulgate, and comply with a policy to ensure that the Defendant will notify individuals who are Deaf or hard of hearing of their right to accommodations in the form of a sign language interpreter and other appropriate auxiliary aids and services. This notification will include posting explicit and clearly worded notices that the Defendant will provide sign language interpreters, videophones, and other communication services to ensure equal access for Deaf persons;

    iv.     to develop, implement, promulgate, and comply with a policy to ensure that Deaf individuals are able to communicate through the most appropriate method under the circumstances, recognizing that the VRI is not appropriate in all medical situations;

    v.     to create and maintain a list of sign language interpreters and ensure availability of such interpreters at any time of day or night;

    vi.     to train all its employees, staff, and other agents on a regular basis about the rights of individuals who are Deaf under the ADA, RA, and ACA; and

      vii.    to train all its employees, staff, and other agents on a regular basis about how to obtain interpreters when reasonably requested by Deaf individuals.

C.    Award to Mr. Gore:

    i.    Compensatory and nominal damages pursuant to the RA and ACA;

    ii.    Reasonable costs and attorneys' fees pursuant to the RA and ACA;

    iii.    Interest on all amounts at the highest rates and from the earliest dates allowed by law;

    iv.    Any and all other relief that this Court finds necessary and appropriate.

## DEMAND FOR JURY TRIAL

Mr. Gore demands trial by jury on the issues of (1) the injuries he suffered as a result of the Defendant's discriminatory conduct; and (2) the quantum of damages that should be awarded.

Dated: May 6, 2019

Respectfully Submitted,

**BIZER & DEREUS**
Attorneys for Plaintiff
Andrew D. Bizer (LA # 30396)
andrew@bizerlaw.com
Garret S. DeReus (LA # 35105)
gdereus@bizerlaw.com
Emily A. Westermeier (LA # 36294)
ewest@bizerlaw.com
3319 St. Claude Ave.
New Orleans, LA 70117
T: 504-619-9999; F: 504-948-9996

By:/s/ Emily A. Westermeier
    Emily A. Westermeier